**SO ORDERED.**

**SIGNED November 3, 2020.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

In re:                                             Case No. 19-20846

Vivian Boyd                                        Chapter 13
Dorothy Compton-Boyd
            *Debtors*                              Judge John W. Kolwe

## RULING ON TRUSTEE'S MOTION TO DISMISS

Before the Court is the Chapter 13 Trustee's Motion to Dismiss (ECF #23), which seeks dismissal of this case on the grounds that the petition was filed in bad faith. The Trustee claims the Debtors had nearly $70,000 in unreported income in their prior case. Thus, the Trustee contends, the Debtors filed this case in bad faith. For the reasons set forth below, the Court will grant the Trustee's Motion and dismiss the case with prejudice under § 349(a), prohibiting the Debtors from filing for bankruptcy protection for a period of one year.

## BACKGROUND

The Debtors were in a previous bankruptcy case, Case No. 16-20940 (the "Prior Case"). The Debtors' First Amended Chapter 13 Plan in the Prior Case (ECF #22)

was confirmed by Order dated March 24, 2017 (ECF #24). The Plan included a pledge of income tax refunds for the years 2016, 2017 and 2018 and stated that "Debtors shall provide the Trustee and their attorney with a copy of their federal and state income tax returns during each year of the plan." The Confirmation Order contained a similar provision which required the Debtors to "timely file all State and Federal income tax returns, and within 10 days of such filing, provide the Chapter 13 Trustee with copies of each such return." (ECF #24). The Confirmation Order also required the Debtors to "timely advise the Chapter 13 Trustee of **ALL** changes in income." *Id.* (emphasis in original). These obligations are consistent with 11 U.S.C. § 521(f)(4) and (g)(2), which impose a duty on all Chapter 13 debtors to make post-petition tax returns available to the Chapter 13 Trustee and certain other parties for inspection or copying.

On October 24, 2019, the Trustee filed a Motion to Dismiss in the Prior Case, asserting that the Debtor's recently provided 2018 tax return showed the Debtors had gross income of $73,772.00, or $6,147.67 a month, which was well in excess of the net income prior to living expenses of $3,474.00 a month reported on the Debtors' Schedule I, which equates to $41,688 in unreported income in 2018. The Trustee argued that the case should be dismissed due to the Debtors' failure to report the change in income. Instead of filing an Opposition to the Trustee's Motion to Dismiss, the Debtors moved to voluntarily dismiss the Prior Case under 11 U.S.C. § 1307 on October 30, 2019 (ECF #59), resulting in the case being dismissed by Order dated October 31, 2019 (ECF #57).

Approximately five weeks later, on December 9, 2019, the Debtors filed this case. The Trustee filed the Motion to Dismiss this case on February 13, 2020 (ECF #23), asserting that in the Prior Case the Debtors not only failed to timely turn over the 2017 and 2018 tax returns but that both the 2017 and 2018 returns showed substantially higher income than the Debtors had listed in Schedule I. The Trustee argues that the Debtors acted in bad faith in deciding to voluntarily dismiss the Prior Case rather than respond to the Trustee's Motion to Dismiss. The Trustee amended the Motion to Dismiss on April 29, 2020 (ECF #28), adding that the Debtors' 2019 tax

2

returns, which had recently been provided to the Trustee, also showed income that was earned but not reported to the Court or to the Trustee.

In his original Memorandum in Support of the Motion to Dismiss (ECF #29), filed on April 29, 2020, the Trustee noted that the tax returns for 2017, 2018, and 2019 reveal that the Debtors had additional after-tax income (i.e. over and above that shown on Schedule I) in the amount of $68,326.19 during the Prior Case that was not disclosed. The Debtors' schedules in this case, much like the schedules in the Prior Case, project limited income, and neither the proposed Plan nor the schedules account for the nearly $70,000 in previously undisclosed income. The Trustee argues that this case should be dismissed under 11 U.S.C. § 1307(c) because it was filed in bad faith.

The Debtors filed a Memorandum in Opposition on April 30, 2020 (ECF #31). They do not dispute that they failed to disclose additional income in the Prior Case, but argue that the additional income would not have had any effect on the case because, according to the Debtors, the additional income would not have been considered additional "disposable income," implying there would have been no additional recovery to creditors had they reported the income. They base this argument on their assertion that the tax returns provided to the Trustee reflect additional dependents, which would have reduced the income available for payment to creditors. The Debtors do not cite any law or set out any calculations explaining how the additional dependents would have entirely offset the additional income, and they do not address the 2019 tax return at all. The Debtors also claim that, regardless of whether the additional income would have resulted in a higher dividend to creditors, they opted to voluntarily dismiss because their failure to timely amend Schedules I and J alone would have required dismissal.[1]

The Court allowed the parties to file supplemental materials in support of their positions prior to the final hearing on the Trustee's Motion to Dismiss on August 13,

---

[1] The Opposition also addresses a personal injury claim that the Trustee alluded to in footnote 7 of his April 29, 2020 Memorandum, but the Trustee did not raise that issue in the Motion to Dismiss, only the Trustee's Objection to Confirmation (ECF #26). Because the personal injury claim was not properly raised in the Trustee's Motion to Dismiss and would not change the result here, the Court declines to address it in this ruling.

3

2020. The Debtors filed an Affidavit (ECF #49) in which they concede that they failed to disclose additional income in the Prior Case "due to unreported overtime," and they reiterate the fact that they had additional dependents during the time in question. The Debtors did not file a supplemental Opposition to the Trustee's Motion to Dismiss, so the Court is left with only the undisputed facts that the Debtors failed to report substantially higher income over a period of years during the Prior Case, with no supporting law or calculations regarding how the additional dependents might have affected the recovery to creditors had the income been disclosed.

The Trustee filed a Supplemental Memorandum on July 28, 2020 (ECF #52), reiterating his previous arguments and asserting that the Court should dismiss this case with prejudice under 11 U.S.C. §§ 109(g) and/or 349(a). As a sanction, the Trustee argues that all the Debtors' scheduled debts should be declared nondischargeable. The Trustee does not cite any cases specifically addressing the sanction issue, relying instead on a provision from the online treatise by Keith M. Lundin.[2] The Court took this matter under advisement following the August 13, 2020 hearing.[3]

The Trustee's Motion presents several issues for decision. First, the Court must determine whether the Debtors had a duty to report additional earnings during their Prior Case, and if so, whether they breached that duty. If the answer to both questions is yes, then the Court must determine whether the Debtors' actions in the Prior Case may be cause for dismissal of this case. For the reasons that follow, the Court answers each of the questions presented in the affirmative and will therefore dismiss this case with a one-year prohibition on the Debtors refiling a bankruptcy petition under any chapter.

---

[2] *See* Lundin On Chapter 13, §153.3, at ¶¶ 1–25, LundinOnChapter13.com.

[3] Since the onset of the COVID-19 pandemic, the Court has been conducting most hearings by telephone or video. However, the Court has allowed limited in-court hearings and trials by agreement of all parties provided they all agree to abide certain protocols. In this case, the parties opted to submit affidavits and other supporting documentation in support of their respective positions, which the Court accepted into evidence without objection. The parties then appeared telephonically on August 13, 2020 and argued their case. The Court's decision in this case is based on the parties' briefs, affidavits, submitted documents, and arguments during the hearing.

4

**A.      The Debtors had a duty to disclose changes in their income, which they breached.**

In Chapter 13, "earnings . . . by the debtor after the commencement of the case but before the case is closed, dismissed or converted" are "property of the estate." 11 U.S.C. § 1306(a)(2). The Fifth Circuit has noted that "Chapter 13 affords 'an individual with regular income' the option of preserving [his or her] 'prepetition assets through a three-to-five-year plan funded primarily with the individual's regular income." *In re Cortez* 457 F.3d 448, 457 (5th Cir. 2006). "Post-petition earnings of the debtor constitute the principal means of funding the plan." *Id.*; *see also In re Pautin*, 521 B.R. 754, 758 (Bankr. W.D. Tex. 2013).

The Fifth Circuit has stressed that Chapter 13 debtors have an ongoing duty to amend their schedules to include increases in post-petition earnings. *See In re Cortez*, 457 F.3d at 457 ("[D]ebtors are obligated to amend their schedules to include subsequent income, even if that income is not known or realized at the time of filing.").

> Put another way, permitting a debtor to retain post-petition improvements in earnings without committing the increase in income that is not reasonably necessary for support of the debtor or the debtor's dependents, would be grounds for rejection or later modification of a Chapter 13 plan. As a practical matter, then, the debtors would be obligated to amend their schedules to disclose any post-petition income under Chapter 13.

*Id.*

> The reason for the rule is obvious: Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows the issue to be decided as part of the orderly bankruptcy process.

*In re Flugence*, 738 F.3d 126, 130 (5th Cir. 2013). If a debtor discloses additional income, then the orderly bankruptcy process will allow the trustee or a creditor to seek modification of a plan under § 1329 of the Bankruptcy Code. As part of that

process, the court will also be able to consider whether the debtor should be allowed to retain all or part of the additional income for his or her maintenance and support.

A debtor has a duty to disclose additional income without additional prodding from the Trustee or any other interested party. Indeed, at least one court has held that a Debtor who fails "to report her additional earnings and tax refunds, absent a specific demand by the Trustee, is not in good faith." *In re Pautin*, 521 B.R. at 763. Nonetheless, the Bankruptcy Code includes a provision that allows a trustee or any other party in interest to request a debtor's tax returns or income and expense reports during the pendency of a Chapter 13 case. *See* 11 U.S.C. § 521(f); *In re Pautin*, 521 B.R. at. 764. The purpose of § 521(f) "is to allow interested parties to monitor a debtor's financial situation during the pendency of the bankruptcy case and to seek modification of the plan pursuant to § 1329 if changes in that situation occur." *In re Nance*, 371 B.R. 358, 371 (Bankr. S.D. Ill. 2007); *In re Slusher*, 359 B.R. 290, 304-05 (Bankr. D. Nev. 2007). However, "the fact that a party has not sought copies of tax returns or income and expense reports does not allow a debtor to use undisclosed income for her own means." *In re Pautin*, 521 B.R. at. 764.

The Court now turns to the facts of this case, and makes the following findings: First, the Debtors do not dispute that they failed to disclose additional income over multiple years in the Prior Case, specifically that they failed to timely turn over the tax returns to the Trustee and failed to amend Schedules I and J as required by not only the Bankruptcy Code, but also by the Confirmation Order and terms of the Plan in the Prior Case. Second, the unreported income was substantial, totaling nearly $70,000 for the years 2017, 2018, and 2019, which might have materially increased the recovery to creditors. Third, when the Trustee filed a Motion to Dismiss on that ground in the previous bankruptcy case, the Debtors did not even attempt to explain their failure to disclose by opposing the Motion. Instead, they voluntarily dismissed the Prior Case and then filed this one less than two months later. Fourth, in the current case the Debtors do not attempt to account for the previous unreported income, acting instead as though the events in the prior case have no bearing on their ability to move forward in this new case. All these facts suggest that the Debtors are

6

attempting to manipulate the bankruptcy system to obtain a discharge of numerous debts, while at the same time being allowed to pocket the nearly $70,000 in undisclosed income.

The Debtors argue that it would have been futile to challenge the Trustee's Motion to Dismiss in the Prior Case because the case would have been dismissed anyway due to failure to amend Schedules I and J. The Court does not find this argument persuasive. It might be tenable if the Debtors had proactively raised and attempted to address the issue of the previously undisclosed income in this case, but that is not the route taken by the Debtors. Rather, they chose not to address the previously undisclosed income until the Trustee again raised the issue in this Motion to Dismiss. All of this suggests that the Debtors' motive was evasion and abuse of the bankruptcy process.

Moreover, the Court is not swayed by the Debtors' argument that the additional income they failed to disclose would not have been determined to be "disposable income" available for payment to creditors because they had more dependents in the tax years at issue. If that were true, then they could have and should have opposed the Trustee's Motion to Dismiss in the Prior Case and laid out the basis for the argument. Even considering the Debtors' failure to disclose the income or amend Schedules I and J in the Prior Case, it is possible the Court would have denied the Motion to Dismiss if the additional income would not have affected the recovery to creditors. However, they did not raise the argument then. Even in this case, the Debtors have failed to set out any law or calculations showing what portion, if any, of the additional income they would have been able to retain due to the additional dependents. The Court finds it unlikely that the number of dependents claimed by the Debtors could have entirely offset the nearly $70,000 in undisclosed income.

Given the undisputed facts and the record in both this case and the Prior Case, the Court finds that the Debtors breached their duty of disclosure in the Prior Case as required by applicable Fifth Circuit jurisprudence. Both *Cortez* and *Flugence* obligate debtors to amend their schedules to disclose additional earnings, just as they

routinely do when their earnings decrease. The Debtors' failure to do so renders them "not in good faith." *In re Pautin*, 521 B.R. at 763. Additionally, the Court finds that the Debtors breached the requirements of § 521(f) of the Code, as well as the confirmed Plan and Confirmation Order in the Prior Case, by not timely providing the Trustee copies of their tax returns for 2017 and 2018.

The Court's findings certainly would have supported dismissal of the Debtors' prior case for cause under § 1307(c)(6) of the Code which authorizes the dismissal of a Chapter 13 case when there has been a "material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(6). The question now becomes whether the Debtors' actions in their Prior Case provide cause for dismissing the current case with sanctions.

**B.      The Debtors' actions in the Prior Case provide cause to dismiss this case with sanctions.**

Section 349(a) of the Bankruptcy Code provides: "(a) Unless the court, **for cause**, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." (emphasis added). Section 349(a) does not define "cause" to dismiss. The same term is used in § 1307(c), which provides, in relevant part:

> Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause**, **including**—
>
> > (1) unreasonable delay by the debtor that is prejudicial to creditors; . . .

11 U.S.C. § 1307(c) (emphasis added).

The statute lists 11 factors that may constitute cause for dismissal of a case, but as the word "including" indicates, the list is not exhaustive. "Although it is not

8

listed in § 1307(c), 'bad faith' is frequently cited as grounds for the dismissal or conversion of a bankruptcy case." *See, e.g., In re Dickerson,* 232 B.R. 894, 897 (Bankr. E.D. Tex. 1999) ('Although it is not specified in the Code, good faith is an implicit jurisdictional requirement for granting relief under Title 11 and that lack of good faith is a basis for dismissal.') (citing *In re Zick,* 931 F.2d 1124, 1126–27 (6th Cir. 1991))." *In re Brown,* No. 05-49114, 2009 WL 565032, at *4 (Bankr. E.D. Tex. Mar. 5, 2009); *In re Spear,* 203 B.R. 349, 352 (Bankr. D. Mass. 1996) ("[A]lthough filing a chapter 13 petition in bad faith is not among the grounds itemized in § 1307(c), it nonetheless constitutes cause for dismissal.") (collecting cases from throughout the country); *In re Simmons*, 149 B.R. 586, 588 (Bankr. W.D. Mo. 1993) (same).

The party moving to dismiss for cause under § 1307(c) bears the burden of proof and may seek dismissal with prejudice to invoke a prohibition on subsequent filings under §§ 109(g) and/or 349(a). *See, e.g., In re Vieweg*, 80 B.R. 838, 841 (Bankr. E.D. Mich. 1987). Section 109(g)(1) bars a debtor from filing a new bankruptcy case for 180 days if "the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case," while dismissal with prejudice "for cause" under § 349(a) is broader and "provide[s] bankruptcy courts with the power to sanction bad faith serial filers by forbidding further bankruptcy filings for longer than 180-day periods (the time period specified by § 109(g))" *In re Jordan*, 598 B.R. 396, 410 (Bankr. E.D. La. 2019).

> To determine good faith, courts use a totality of the circumstances test, with no single factor being conclusive. Both subjective and objective factors determine if a chapter 13 petition for relief has been filed in good faith or if a proposed plan is offered in good faith. The standard for good faith applicable to repeat filers is similar to the standard of good faith required for confirmation, which focuses on a debtor's intention to perform the obligations under the plan and not abuse the bankruptcy process.

*In re Jordan*, 598 B.R. at 406 (footnotes omitted).

A court's determination of bad faith is not limited to the debtor's conduct in the current case. "While a debtor's serial filings do not necessarily constitute bad faith, a

9

debtor's prepetition conduct, including his conduct in prior cases, is a valid consideration in determining a debtor's good faith in filing a subsequent case and confirmation of a proposed plan." *In re Jordan*, 598 B.R. at 406–07; *In re Spear*, 203 B.R. 349, 352–53 (Bankr. D. Mass. 1996) (citations omitted). ("Bad faith exists . . . when a debtor's conduct before or during a case constitutes an abuse of the provisions, purpose, or spirit of the chapter under which relief is sought. While a debtor's history of filings and dismissals is not bad faith, per se, it may be evidence of bad faith.").

Courts often examine the debtor's conduct in previous cases to determine whether the debtor has filed the current case in bad faith. *See, e.g., In re Gros*, 173 B.R. 774, 776 (Bankr. M.D. Fla. 1994) ("Bad faith is also a cause to dismiss a case. *Shell Oil Co. v. Waldron (In re Waldron),* 785 F.2d 936 (11th Cir. 1986). Here, the debtor's bad faith can be inferred from the filing of multiple bankruptcies which are later involuntarily dismissed."); *Simmons*, *supra* (Chapter 13 case dismissed for bad faith where the pro se debtor had filed multiple previous bankruptcies on the eve of foreclosure after having been told that the key dispute would need to be resolved in state court, and where the debtor had either voluntarily dismissed the previous cases or had them dismissed for failure to file schedules, statements, and a plan, all of which constituted an unfair manipulation of the Bankruptcy Code); *In re Dent*, 275 B.R. 625 (Bankr. M.D. Ala. 2002) (finding that the bankruptcy petition was filed in bad faith where the previous case was dismissed for the debtor's failure to pay, the debtor filed the next case weeks later and failed to disclose the previous case or make payments); *In re Mock*, 197 B.R. 468 (Bankr. E.D. Pa. 1996) (finding bad faith where the debtor's serial petitions, facially infeasible proposed plans, and evasiveness at trial indicated his intent to manipulate the bankruptcy system).

Turning again to this case, the Court finds that the Debtors' decision to voluntarily dismiss the Prior Case rather than addressing the substantial undisclosed income at that time, then filing this case soon thereafter and failing to account for that income, constitutes an abuse of the bankruptcy process and thus bad faith. As the Court sees it, the Debtors ignored their obligations under the Bankruptcy Code, the Confirmation Order, and the Plan to fully disclose income, and

10

even after their disclosure lapses were brought to their attention, they took no steps to address the situation and offered no explanations. They waited until the Trustee filed the Motion to Dismiss this current case to assert, for the first time, that they had other dependents which may have impacted the disposable income they had to dedicate to making plan payments. To the extent this may be a defense, they offer no explanations as to how the increased dependents would have impacted the case. Thus, the defense is not only asserted late, but is also not supported.

Accordingly, the Court finds dismissal for cause is warranted under § 1307(c), and that the dismissal should be with prejudice under § 349(a). In making this finding, the Court is factoring in the Debtors' actions in the Prior case, as allowed under the jurisprudence discussed in this section of the opinion.

As noted above, the Court has discretion under § 349(a) to impose sanctions upon dismissal of a case with prejudice, including a prohibition against filing a subsequent bankruptcy for some period of time, even in excess of the 180-day prohibition found in § 109(g) for "willful failure of the debtor to abide by orders of the court." The Debtors' conduct was, in the Court's opinion, a willful and blatant attempt to evade the consequences of their failure to disclose the additional income as required by the Bankruptcy Code, the Confirmation Order, and the Plan in the Prior Case. Thus, dismissal with prejudice is warranted. Nevertheless, because there is some uncertainty as to how much of the additional income would have come into the bankruptcy case had it been properly disclosed, the Court is not willing to impose the harshest sanction under § 349(a) as requested by the Trustee, which would have the Court declaring all of the Debtors' debts to be nondischargeable. Instead, the Court will dismiss this case with prejudice, prohibiting the Debtors from filing another bankruptcy case for a period of one year, as authorized under § 349(a) of the Code.

## CONCLUSION

The Debtors earned nearly $70,000 in undisclosed income during their prior case. When confronted with this fact, they chose to voluntarily dismiss that case and then file a new case five weeks later without attempting to disclose, much less

address, the additional income from the Prior Case. The Court finds that the Debtors' actions are an abuse of the bankruptcy process, requiring dismissal of this case for cause under § 1307(c) of the Code. The Court also finds that this case should be dismissed with prejudice under § 349(a), barring the Debtors from filing a bankruptcy case for a period of one year from the date of dismissal of this case. The Trustee shall submit an Order of Dismissal in conformity with this ruling within ten (10) days from entry of this Ruling.